UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROL ANN D'ALESSANDRIS,

    Plaintiff,

v.                                                                    CASE No. 8:07-CV-1975-T-TGW

SARASOTA COUNTY,

    Defendant.

_____

# O R D E R

The plaintiff sues her former employer for violations of her constitutional rights and for breach of contract arising from her termination as a bus driver for defendant Sarasota County. The defendant has filed a motion for summary judgment as to the plaintiff's claims (Doc. 19).

The plaintiff has not stated cognizable claims for retaliation for the exercise of her First Amendment rights of freedom of speech and freedom of association because the statements upon which she relies were made as an employee. and not a citizen, and also do not pertain to a matter of public concern. Moreover, this court does not have jurisdiction of her state law

claim for breach of contract. Accordingly, the motion for summary judgment will be granted.

I.

The plaintiff, Carol Ann D'Alessandris, was employed by the defendant, Sarasota County ("County"), from June 2000 until April 2007 (Doc. 25, p. 2). She worked as a bus driver for Sarasota County Area Transit ("SCAT") until she was terminated for failing to assist a double-amputee in boarding her bus (Doc. 19-4, p. 22). The plaintiff alleges, however, that the real reason she was fired was due to unlawful retaliation for certain protected speech and right of association in connection with her "participation in employee related matters, and for seeking to effect changes in working conditions and supervisory practices" (Doc. 6, p. 2, ¶ 7).

On March 19, 2007, Ellen Ackerly, who had had both legs amputated above the knee, asked the plaintiff at a bus stop for help onto her bus (Doc. 19-4, p. 21). The bus ramp was unfolded and D'Alessandris prepared seating to accommodate Ackerly's electric wheelchair (id.). The parties agree that the bus stop was not compliant with the Americans with Disabilities Act, and Ackerly had difficulty boarding the bus (id., p. 11). Ackerly requested the plaintiff to get off the bus and stand behind her electric

wheelchair while she attempted to board (id., p. 22). However, the plaintiff informed Ackerly that she was not allowed to help and remained seated in the driver's seat (id.). Ackerly pleaded several times for assistance, but eventually gave up (id.). The incident was recorded by the bus's video camera (Doc. 27).

Subsequently, Brenda Miller, transit operations manager for SCAT, investigated the incident and recommended that the plaintiff be terminated because she was "very cold in her willingness to help" Ackerly (Doc. 19-4, p. 10). The County therefore issued to the plaintiff a Notice of Intent to Discipline by termination of employment (Doc. 19-3, p. 85). D'Alessandris also attended a pre-termination meeting and presented mitigating information against her dismissal (id.). However, the Executive Director of Public Works, James K. Harriott, Jr., concluded that the facts provided by D'Alessandris were inadequate to reverse the termination (id.). The plaintiff filed a grievance of Harriott's decision and, on May 24, 2007, was offered her job back with the conditions that she accept a thirty-one day suspension, probation, sign a release, and not obtain legal representation (Doc. 25, p. 9; Doc. 26, p. 15). The plaintiff declined the County's offer and subsequently filed this lawsuit (id.).

The plaintiff claims she was fired, not for the incident involving the disabled woman, but for complaints she made internally to supervisors and colleagues throughout her tenure as a bus driver (Doc. 25, p. 4; see Doc. 19-3, pp. 33-36, 40-49). D'Alessandris alleges that her speeches involved matters of public concern, including unfair working conditions and "speaking out against employee terminations, the efficient, competent operation of the bus system, conduct of co-employees, and the County's lack of institutional control" (Doc. 25, p. 8). Additionally, D'Alessandris contends that her statements were made as a citizen "because she was concerned with the public image of SCAT, as well as the efficient operation of the bus system" (Doc. 40, p. 5). In support of these contentions, the plaintiff, in her memoranda, specifies three sets of circumstances (Doc. 25, p. 4; Doc. 40, pp. 3-4).

The plaintiff's first statements she alleges were protected speech were made in October 2006, six months prior to her termination, when she complained internally about newly hired bus drivers (Doc. 25, p. 4). At that time, the County employed several new drivers, but it was unable to supply corresponding buses, uniforms, or training (Doc. 19-4, p. 8). The new employees were instructed to ride specific buses, including the plaintiff's bus, and to act as passengers in plain clothes in order to learn the bus route in the

-4-

meantime (id.). During a paycheck dispute meeting between D'Alessandris and her supervisors Chris Horner and Jan Wagnitz, the plaintiff complained that the new hires were using vulgar, profane language, were not wearing uniforms, and were violating conduct and union standards (Doc. 19-3, pp. 33-34, 38-39). The plaintiff alleges that she made numerous other complaints about the issue internally, but that "no actions [were] taken to assist and help me after I made the complaints" (Doc. 26, p. 4, ¶ 11).

D'Alessandris alleges that her concerns with the new employees were lodged because she was concerned about the public image of SCAT (id.). In addition, she argues that the matter was related to unfair working conditions (Doc. 25, p. 4; Doc. 40, p. 3).

The plaintiff's second set of statements occurred in January 2007 when she voiced her fears, internally, about a co-employee named Jose Irizarry (Doc. 25, p. 4). While sitting in the employee lunchroom, D'Alessandris became frightened by Irizarry when he allegedly displayed a switchblade knife and ran his finger over the blade in a threatening manner (Doc. 19-3, p. 41; Doc. 25, p. 4; Doc. 26, p. 3, ¶9). D'Alessandris complained to Greg Carlo, the County's fixed transit dispatch supervisor, and to her supervisor, Tony Vera (Doc. 19-3, pp. 41-43; Doc. 40, p. 4). Irizarry denied

the allegation, and the plaintiff's superiors concluded that he posed no threat and doubted D'Alessandris's credibility (Doc. 25, p. 4). The plaintiff subsequently discussed the incident with union members and other employees regarding her dismay that Irizarry was not searched and instead that "his word" was taken about the incident (Doc. 19-3, p. 44). D'Alessandris's concern was that she felt "threatened by the display of this weapon" and was aggrieved that "[t]here was no action taken to protect me after I made the complaint" (Doc. 26, p. 3, ¶ 9). The plaintiff alleges that her pursuit of justice was not a personal matter, but was one of public concern for workplace safety (id.).[1]

The plaintiff's final category of speech stems from complaints she made internally to supervisors and employees at the beginning of 2004 about boisterous teenage student passengers attending the Gulf Coast Marine Academy (Doc. 25, p. 4). D'Alessandris made repeated calls to dispatch about the students' behavior on her bus and complained that "[n]o action was taken by my supervisors to help me after I made the complaints"[2] (Doc. 26,

---

[1]After this incident, D'Alessandris was referred to anger management by her supervisor (Doc. 19-4, p. 3).

[2]Her supervisor, Brenda Miller, reviewed the bus tape involving the plaintiff and the students that allegedly shows the plaintiff "screaming and ranting at everybody" (Doc.

p. 4, ¶ 10). However, the County subsequently entered into a "last chance agreement" with the parents so that any further disruptions would result in the loss of the right of the students to ride on the bus (Doc. 19-4, p. 7; Doc. 25, p. 4). D'Alessandris contends that the rowdy children posed a threat to public safety and led to her termination "[b]ecause our managers blamed us when things went wrong on the bus, [and] I was being told that I caused the problem" (Doc. 19-3, p. 64).

The plaintiff filed this suit in state court. However, the defendant subsequently removed it to this court (Doc. 1). After removal, the plaintiff filed a three-count amended complaint, the third count of which was against the Amalgamated Transit Union Local 1701, A.F.L.-C.I.O. (Doc. 6). The union was subsequently dismissed by United States District Judge Richard A. Lazzara on the ground that the Florida Public Employee Relations Commission had exclusive jurisdiction over the claim of breach of a duty to defend her from termination (Doc. 10).

The parties thereafter consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 34). The defendant, in the meantime,

19-4, p. 3). Later, Miller called a meeting with the plaintiff and the union steward to view the tape because she thought "this is horrendous customer service and ... was not the way to handle the situation with these children" (id.).

had filed a motion for summary judgment as to Counts I and II (Doc. 19), and the plaintiff had responded (Doc. 25). However, the parties were provided an opportunity to file supplemental memoranda (Doc. 39), because the plaintiff had not mentioned the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410 (2006), in her response (Docs. 40, 43). Oral argument was subsequently heard on the motion (Doc. 47).

## II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c)(2). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by

identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. <u>United States</u> v. <u>Four Parcels of Real Property</u>, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." <u>Id</u>. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. <u>Id</u>. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark</u> v. <u>Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. <u>United States</u> v. <u>Four Parcels of Real Property</u>, <u>supra</u>, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. <u>Reynolds</u> v. <u>Bridgestone/Firestone, Inc.</u>, <u>supra</u>, 989 F.2d at 469. Any reasonable doubts

about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

III.

In Count I, the plaintiff alleges that the County retaliated against her for exercising her rights to freedom of speech and of association (Doc. 6). The defendant argues that it is entitled to summary judgment because D'Alessandris cannot meet her burden of showing that she was speaking as a citizen on a matter of public concern (Doc. 19).

It is well established that a public employer may not retaliate against an employee for protected speech. Brochu v. City of Rivera Beach, 304 F.3d 1144, 1157 (11th Cir. 2002). The Eleventh Circuit has recognized a four-step test to determine whether a public employer has retaliated against an employee for that individual's exercise of the right to free speech. Those four inquiries are: (1) whether the speech may be "fairly characterized as constituting speech on a matter of public concern"; (2) if so, whether the employee's First Amendment interests outweighed the interest of the employer in preserving the efficiency of government services; (3) whether, in that event, the employee's expression was a substantial motivating factor

-10-

in the government's discharge decision; and (4) if an employee has made such a showing, whether the public employer can prove that it would have taken the same employment action even in the absence of the protected conduct. Id.

To fall within the scope of "public concern," the employee's speech must relate to a matter of political, social, or other concern to the community. Connick v. Myers, 461 U.S. 138, 146 (1983). A fundamental question in making this assessment is whether the employee was speaking as a citizen on behalf of the public, or to further his own private interests. Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993), cert. denied, 512 U.S. 1221 (1994). This requires an analysis of the content, form and context of a given statement, as revealed by the whole record. Id. Additionally, since "an employee's speech will rarely be entirely private or entirely public," it is "the 'main thrust' of the employee's speech" that governs this determination. Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir. 2000)(quoting Morgan v. Ford, supra, 6 F.3d at 755).

The Supreme Court has subsequently in Garcetti v. Ceballos, supra, shed additional light on the law in this area. The Supreme Court held that, "when public employees make statements pursuant to their official

-11-

duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. Thus, "[i]n Garcetti, the Supreme Court emphasized that a public employee must speak both on a matter of public concern and as a citizen to be protected under the First Amendment." D'Angelo v. School Board of Polk County, Florida, 497 F.3d 1203, 1209 (11th Cir. 2007). Importantly, both of these factors are matters of law for the court to decide. See Boyce v. Andrew, 510 F.3d 1333, 1342 n.12 (11th Cir. 2007).

Despite other potential challenges to the retaliation claim, the defendant bases its argument on the plaintiff's asserted failure to show that her statements were made as a citizen and that they addressed matters of public concern. In response, the plaintiff raises three sets of circumstances in support of her constitutional claim. In none of those situations was the plaintiff speaking as a citizen, and the subjects did not involve a matter of public concern.

The plaintiff has the burden of proving as a threshold matter that she spoke as a citizen rather than as a public employee. Abdur-Rahman v. Walker, 567 F.3d 1278, 1281-82 (11th Cir. 2009). In her initial response, she did not address this issue (Doc. 25). Accordingly, D'Alessandris was

-12-

provided an opportunity to remedy that deficiency (Doc. 39). The plaintiff's supplemental response, however, does not state with specificity facts showing that she made the statements as a citizen, rather than as an employee of a public entity (Doc. 40). Although she cited to Garcetti, the plaintiff, in a conclusory manner, argues only that her complaints were made "because she was concerned with the public image of SCAT, as well as the efficient operation of the bus system" (id., p. 5). Particularly in light of the plaintiff's failure to make a meaningful showing on the issue, the evidence in the record establishes that the plaintiff's complaints were asserted in her capacity as a public employee.

The inquiry whether a public employee spoke as a citizen on behalf of the public or whether she spoke for herself as an employee is "a practical one." Garcetti v. Ceballos, supra, 547 U.S. at 424. Accordingly, the inquiry is not necessarily resolved by formal job descriptions. Id. at 424-25.

In Garcetti, the employee's speech was part of his official duties. No one asserts that this is the case here.

In circumstances like those present here, "[t]he [Supreme] Court identified as relevant two factors that, considered in isolation, are not dispositive: first, whether the speech occurs in the workplace; and second,

-13-

whether the speech concerns the subject matter of the employee's job."

Abdur-Rahman v. Walker, supra, 567 F.3d at 1282. The plaintiff's statements

occurred in the workplace and concerned her working conditions.

        With respect to the first set of circumstances, the plaintiff's

complaints about the new hires' poor language and riding of the County's

buses as passengers in plain clothes and without training were made in the

context of her job as a public employee. She was complaining about the

conduct of the new hires as fellow employees. Significantly, the plaintiff did

not bring this problem to the attention of her supervisors until she called a

meeting to dispute her paycheck (Doc. 19-3, p. 34). Thus, the complaints

were made internally at the workplace, and were not made in a setting that

could plausibly be considered a public forum.

        Furthermore, although the plaintiff was aware that the County

did not have available resources for the new employees, she expected the

supervisors to issue a letter reminding the staff "to follow all rules," which

apparently Miller did (id., pp. 35, 37-38; see Doc. 19-4, p. 8). The plaintiff

believed that her supervisors were fostering "unfair working conditions," in

violation of her union contract by failing to correct the new hires' behavior

-14-

(Doc. 19-3, pp. 33, 37-38, 39). Clearly, the object of her complaints was to change working conditions.

In short, these statements were made in the workplace about working conditions. Therefore, they are properly viewed as being uttered by the plaintiff as a public employee, and not as a private citizen. Accordingly, they are not protected by the First Amendment. This conclusion is supported by several recent decisions of the Eleventh Circuit. See, e.g., Abdur-Rahman v. Walker, supra; White v. School Board of Hillsborough County, 2009 WL 174944 (11th Cir. 2009)(unpub. dec.); Burton v. City of Ormond Beach, 301 Fed.Appx. 848 (11th Cir. 2008)(unpub. dec.).

The plaintiff's complaints about teenagers attending the Gulf Coast Marine Academy was, for similar reasons, made in her capacity as an employee and not as a citizen. In this regard, the plaintiff expressed internally her concerns about the students who rode on her bus (Doc. 19-3, p. 49). The plaintiff has not adduced any evidence indicating that she made some public statement about this matter (Doc. 26). Thus, the statements simply took place within the workplace (id.).

The plaintiff asserts that the situation was a matter of public safety, although she does not explain why that is so (id., pp. 3-4). If the

-15-

assertion is correct, that would mean that the problem is a part of the plaintiff's official job duties as a bus driver. In that event, <u>Garcetti</u> squarely holds that the plaintiff's complaints about the problem are made as a public employee, and not as a private citizen. 547 U.S. at 421; <u>see also Stokes</u> v. <u>Savannah State University</u>, 291 Fed.Appx. 931 (11th Cir. 2008)(unpub. dec.); <u>Schuster</u> v. <u>Henry County, Georgia</u>, 281 Fed.Appx. 868 (11th Cir. 2008) (unpub. dec.).

And, if the problem did not involve public safety, so that the plaintiff's complaints were not part of her official job duties, then they would simply be complaints about her working conditions. As previously explained, such complaints in the context of this case do not provide the plaintiff with First Amendment protection.[3]

With regard to the switchblade incident, the plaintiff stated that another employee, while seated at another table in the lunchroom, took a switchblade knife out of his bag, opened and closed it, and looked up in the air (Doc. 19-3, p. 41). The co-worker did not say anything to the plaintiff

---

[3]I digress to note that it is hard to believe that the defendant would retaliate against the plaintiff because she complained about unruly students, particularly since other bus drivers did so, as well. My skepticism of this contention, however, plays no role in my analysis of the threshold legal issues.

(id.). The plaintiff complained to a supervisor (id.). After the co-worker had been questioned and denied having a knife, the plaintiff, through her husband, complained that nothing had been done (Doc. 19-3, p. 43). Thus, the complaints were only made internally; there is no indication, for example, that the plaintiff called the police.

Moreover, the plaintiff asserts in her affidavit that "[t]his was not a personal complaint, this was a complaint of work-place violence and safety" (Doc. 26, p. 3, ¶ 9). Accordingly, the complaints concerned the subject matter of employment.

The circumstances demonstrate that the plaintiff was speaking about the incident as a public employee, and not as a private citizen. The complaints, therefore, are not entitled to First Amendment protection.

In sum, all of the three sets of statements upon which the plaintiff relies were made as a public employee, rather than as a private citizen. This determination defeats the plaintiff's free-speech claim at the threshold.

Furthermore, there is an additional reason why the plaintiff's claim fails. None of the three sets of statements addressed a matter of public concern.

Whether speech is on a matter of public concern is a question of law "readily susceptible to disposition on summary judgment." Ferrara v. Mills, 781 F.2d 1508, 1515 (11th Cir. 1986). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices." Connick v. Myers, supra, 461 U.S. at 146. Statements are analyzed based on the content, the form, and the context of the entire record. Martinez v. City of Opa-Locka, 971 F.2d 708, 712 (11th Cir. 1992).

Various considerations have been identified as pertinent to an assessment whether a statement involves a matter of public concern. Thus, the motivation for an employee's speech is relevant to the public concern inquiry. Goffer v. Marbury, 956 F.2d 1045, 1049 (11th Cir. 1992). In addition, the fact that the information may be of general interest to the public is not dispositive. Morris v. Crow, 142 F.3d 1379, 1381-82 (11th Cir. 1998). Whether the speech is publically disseminated, while not required, can be a significant factor in this analysis. Morgan v. Ford, supra, 6 F.3d at 754 n. 5.

The plaintiff asserts that her statements related to "matters of work-place safety, violence in the work place, and the image of SCAT," and

that these matters are of importance to the public purpose of the plaintiff's former employer (Doc. 26, p. 3, ¶ 8). This assertion appears to glorify what are no more than personal grievances about working conditions. Consequently, the plaintiff's emphasis at the hearing regarding the purpose of her statements adds nothing to her claim. The plaintiff's purposes in making her statements were to improve her own working conditions or to assuage personal annoyances.

The plaintiff's statements about the new hires and the students did not involve a matter of public concern. Indeed, it is doubtful that the public would even have any interest in those circumstances. But even if the public had some interest, that would not be enough to sustain a First Amendment claim. "The fact that ... information may be of general interest to the public ... does not alone make it of 'public concern' for First Amendment purposes." Morris v. Crow, supra, 142 F.3d at 1381-82. Moreover, an internal dispute does not become a matter of public concern simply because it involves the way a public institution is managed. Ferrara v. Mills, supra, 781 F.2d at 1516. "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public

-19-

official – would plant the seed of a constitutional case." Connick v. Myers, supra, 461 U.S. at 149.

The conclusion that the plaintiff's complaints about the new hires and the students do not amount to matters of public concern is supported further by the fact that the plaintiff did not express her perceptions about the transit system to the general public. Furthermore, there is no indication that, at the time she made her complaints, there was any relevant public debate on the subjects of the complaints. These circumstances confirm that the statements about the new hires and the students did not address a matter of public concern.

The alleged presence of the knife in the lunchroom cannot reasonably be considered even a matter of public interest. The public simply would not care about the incident. A fortiori, it clearly was not a matter of public concern. And this would be true even if she had called the police – something she did not do. Houskins v. Sheahan, 549 F.3d 480, 491-92 (7th Cir. 2008) (the striking of the face of a co-worker which was reported to the police is not a matter of public concern).

In order to prevail on her freedom-of-speech claim, the plaintiff, at the threshold, had to show that she spoke as a private citizen, and not an

employee, and that her speech addressed a matter of public concern. She established neither. Consequently, the claim fails.

The plaintiff also alleged that her right to association was infringed when she was terminated for her activities with the union "to punish her for speaking out in favor of employee rights, and for seeking to effect changes in working conditions" (Doc. 6, p. 2). However, in her memoranda in opposition to the summary judgment motion, she essentially tagged her freedom-of-association claim on to her freedom-of-speech claim. Thus, she neither set out the principles she thought governed a freedom-of-association claim, nor articulated any analysis of the claim (see Docs. 25, 40). The one case that was cited, McCabe v. Sharrett, 12 F.3d 1558 (11th Cir. 1994), was inapposite because it dealt with the special associational right of marriage. Under these circumstances, if the plaintiff is purporting to assert a right-of-association claim separate and distinct from a freedom-of-speech claim, that claim is deemed abandoned for lack of development.

It is appropriate to add that, to the extent that a freedom-of-association claim can be discerned, it fails for one of the reasons that doomed the freedom-of-speech claim: The associational activity was not undertaken as a citizen. In D'Angelo v. School Board of Polk County, Florida, supra,

497 F.3d at 1212-13, the Eleventh Circuit held that <u>Garcetti</u> extended to associational activity. Accordingly, in order to be protected by the First Amendment, public employees must engage in associational activity as a citizen. <u>Id</u>. Since the plaintiff has not pointed to any facts other than the three sets of circumstances relied upon in connection with the freedom-of-speech claim, the plaintiff cannot make the showing required for a freedom-of-association claim.

In Count II, the plaintiff alleges that the defendant terminated her in violation of her employment contract. That count incorporated the following allegation (Doc. 6, p. 2):

> She was targeted for termination because of her involvement with THE UNION. The substantial motivating factors in Plaintiff's termination were to punish her for speaking out in favor of employee rights, and for seeking to effect changes in working conditions.

The defendant has moved for dismissal of the claim on the ground that it alleges an unfair labor practice by the defendant, and that the Florida Public Employees Relations Commission ("PERC") has exclusive jurisdiction of that state law claim (Doc. 19, pp. 9-11). The plaintiff has not provided any meaningful response to this argument (Doc. 25, p. 9).

Florida law provides that public employers are prohibited from "[i]nterfering with, restraining, or coercing public employees in the exercise of any rights guaranteed under this part." Fla. Stat., §447.501(1)(a). The guaranteed rights include the "right to engage in concerted activities not prohibited by law, for the purpose of collective bargaining or other mutual aid protection." Fla. Stat., §447.301(3); City of Coral Gables v. Coral Gables Walter F. Stathers Memorial Lodge 7, Fraternal Order of Police, 976 So.2d 57, 63 (Fla. App. 2008). A violation of those rights constitutes an unfair labor practice and is to be remedied in a proceeding before the PERC that is initiated by an employer, employee, or employee organization. Fla. Stat., §447.503(1). Thus, an unfair labor practice charge can be filed by an employee. See, e.g., Gibbons v. State Public Employees Relations Commission, 702 So.2d 536 (Fla. App. 1997). Activities which "arguably" constitute unfair labor practices are within the PERC's exclusive jurisdiction. Browning v. Brody, 796 So.2d 1191 (Fla. App. 2001).

The plaintiff's claim in Count II is foreclosed because it falls within the exclusive jurisdiction of the PERC. As indicated, the plaintiff's claim is that she was terminated due to her involvement with the union, and that the termination was motivated by an intent to punish her for speaking out

-23-

in favor of employee rights and for seeking to affect changes in working conditions. This is clearly an allegation of an unfair labor practice. <u>See</u> <u>School Board of Lee County</u> v. <u>Lee County School Board Employees, Local</u> <u>780, AFSCME</u>, 512 So.2d 238 (Fla. App. 1987). In all events, it certainly is "arguably" such an allegation. Therefore, the PERC has exclusive jurisdiction of the claim in Count II. Accordingly, that claim will be dismissed.

It is, therefore, upon consideration

ORDERED:

That Defendant, Sarasota County's Motion for Summary Judgment (Doc. 19) be, and the same is hereby GRANTED in favor of the defendant Sarasota County, and against the plaintiff Carol Ann D'Alessandris. The Clerk shall therefore enter judgment dismissing the Amended Complaint and then CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 2ⁿᵈ day of September, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE